STATE of Missouri ex rel. **FORT OSAGE SCHOOL DISTRICT et al., Relators,**

v.

**Bernice CONLEY, Respondent.**

**KCD 26349.**

Missouri Court of Appeals, Kansas City District.

Sept. 13, 1972.

Slagle & Bernard, Richard F. Adams, Kansas City, for relators.

Donald B. Clark, Kansas City, for respondent.

DIXON, Judge.

This is a direct appeal from the order of the trial court denying mandamus directing the Jackson County Clerk to extend school tax levies on a disparate basis in two separate geographic areas now one school district by reason of annexation. The order of the trial court is reversed and the cause remanded with directions to enter a peremptory order of mandamus.

This appeal has been accelerated by motion requesting early determination because of the exigency requiring extension of the taxes prior to September 15th. The parties have stipulated the facts and the evidence in the trial court is likewise part of the record. Both the stipulation and the

transcript have been utilized in stating the facts and issues.

The action was originally filed by individual relators and the Fort Osage School District. The case pends now on the appeal of the individual relators only, the school district having explicitly waived its right to appeal.

The separate tax levies and the annexation which pose the issue in this case arose in the following fashion. Courtney School District, a three (3) director district faced with the imperative of annexing itself to another larger district or suffering such annexation at the hands of the State Department of Education (Sec. 162.-096 R.S.Mo.1969, V.A.M.S.), began discussions with Fort Osage looking toward annexation. These "negotiations" began in February, 1972, and were aimed at accomplishing the necessary annexation while retaining the lower level of taxation enjoyed by the patrons of the Courtney District for 1972. Fort Osage candidly admits that they were willing to accept the Courtney District with the lower rate of taxation for 1972 "if it were legally possible". These so-called "negotiations" or "agreements" are set forth only as background since neither school board could have effectively made such an agreement binding upon the voters of the districts. Both the fact of annexation and the levy of a tax in excess of $1.25 per hundred dollars assessed valuation require voter approval. Constitution of Missouri, Article X, Section 11(b) and 11(c), V.A.M.S., Section 162.441 R.S. Mo.1969, V.A.M.S.

The proposed annexation of Courtney School District to the Fort Osage School District was presented to the voters of Courtney at a *special* meeting of the patrons held April 19th, after the annual meeting at which the voters had approved the levy which is discussed infra. The annexation proposition voted upon was de-

clared in the proposition to be effective July 1, 1972. The record demonstrates this date was selected for the salutary purpose of permitting the preparation of an adequate educational program for the expanded school district during the summer months.

Courtney School District being a three (3) director district proceeded, on February 24th, to direct the posting of notices for the annual school election to elect a director and to *vote* a levy of $3.75 per hundred dollar valuation as authorized by Section 162.751 R.S.Mo.1969, V.A.M.S. The parties apparently deeming it of little importance have not included the date and the results of the vote by the patrons on this proposed levy. There is no issue that this $3.75 levy was valid and the presumption is indulged that the notices mentioned were posted, the school election held, and the $3.75 levy approved.[1]

The Fort Osage levy, which forms the other branch of the issue here presented, stands on a little different footing but still contains the ingredient of voter approval significant in the disposition of this case. The Fort Osage board on June 13, 1972, voted to assess a levy of $4.80 which was arrived at by adding to the $1.25 permitted by law without vote, the $2.50 approved by the voters in 1970 and which continues from year to year unless changed. Article X, Section 11(c), Constitution of Missouri. The balance of $1.05 was debt service required to be levied regardless of voter approval. Section 164.161 R.S.Mo. 1969, V.A.M.S. This levy could not have been effective as to any territory other than the Fort Osage District. The respondent argues that after the effective date of the annexation the Fort Osage board could have extended the levy of $4.80 to the Courtney area. Grave doubt of the validity of the levy so extended would certainly arise as to the $2.50 por-

---

1. The clerk of the school board certified to the assessor that the levy had been made with voter approval when the Court-

ney estimate was filed. This estimate was an exhibit in the trial court.

tion of the levy never voted on by the Courtney patrons.

The provisions for notice of a special election, Section 162.061, R.S.Mo.1969, V.A.M.S., requiring fifteen (15) days notice would have prevented any election in the expanded district after the July 1 effective date of annexation, in time to comply with the July 15th deadline for the submission of the estimate to the County Clerk imposed by Section 164.011 R.S.Mo. 1969, V.A.M.S.

Upon these facts the individual relators and respondent City Clerk reach contrary conclusions, relying upon the same authority. The parties concede that the only authority on the issue presented is Lewis County C-I School District et al., relators v. Normile, respondent 431 S.W.2d 118 (Mo.Sup. En Banc, 1968), which construed and applied Article X, Section 3 of the Constitution of Missouri. Because of this joint reliance of the parties and the obvious applicability of its facts and holding to the instant case, it is appropriate to present here the factual setting and holding of the opinion at some length.

The Lewis case was in prohibition. Relators, a newly created school district, sought to prohibit the circuit judge from enforcing an injunctive order which prohibited the county collector from collection of any tax in excess of a levy of $2.50.

This injunctive order arose in litigation which was initiated by patrons of the C-I district against the C-I district's board of directors, the collector and the treasurer. The litigation raised the question of the valid rate of taxation by District C-I under these facts. Four districts, R-I through R-IV, proceeded to consolidate as District C-I. The election for consolidation was held in May. Prior thereto and in obedience to the statute, Sections 164.021 and 164.031, R.S.Mo.1969, V.A.M.S., each of the districts had submitted to the voters a tax levy ranging from $2.50 to $3.25. These were extended by the assessor as to each of the districts and certified to the

collector for collection. The injunctive litigation was commenced in the fall and sought to enjoin the collection of the disparate rates on the theory that the taxes were unconstitutional and void as in violation of Article X, Section 3 which then and now provides in part:

"Taxes may be levied and collected for public purposes only, and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

The respondent circuit judge contended that to comply with the constitutional mandate the tax rate for C-I was required to be the same and violation was sought to be avoided by declaring the lowest adopted rate applicable to all.

The Supreme Court held that the respondent circuit judge should be prohibited from enforcing the injunctive order and set it aside, which action had the effect of putting in effect the four different rates for varying portions of the new district.

The Supreme Court reached its result by reasoning that the setting of levies was a purely legislative function, State ex rel. and to Use of Parish v. Young, 327 Mo. 909, 38 S.W.2d 1021-1023 (1931), and that the Circuit Judge's order was in excess of his jurisdiction and void. The court then asserted that either the earlier differing levies of the dissolved district were valid or there was no valid tax levy.

District C-I had assessed no levy after it came into existence. Relying upon the statutory plan for consolidation, and particularly Section 162.251 R.S.Mo.1959, V.A.M.S., and cases construing that provision relating to transfer of property from old districts to a consolidated district which they form, the court determined that the levies made prior to consolidation became a property right and an intangible asset of the district which, when collected and in the hands of the treasurer, were available to District C-I for its general purposes. The court by this reasoning sup-

ported its conclusion that the tax rates set by the voters in each of the predecessor districts were valid when approved and did not violate Article X, Section 3 of the Constitution of Missouri.

Applying the holding and reasoning to the facts of this case, it supports but one conclusion. The tax rates have voter approval and when made became a species of intangible assets of the respective districts and, upon maturing into cash funds by reason of the ministerial acts of the assessor, collector and treasurer, would have become funds available for the general purposes of the district. Section 162.441, subsection 4 provides for the same transfer of property to the surviving six (6) director district in an annexation situation as Section 162.251 provides for in consolidation. The statutory plan here, as in Lewis, thus provides a mechanism for such a surviving district to assume the benefits of the predecessors' action. As noted heretofore, these issues do not require a ruling of the question of the propriety of action by the surviving six (6) director district attempting to enforce a voter approved levy upon annexed territory without a vote of the people in the newly annexed territory. This is mentioned specifically not only to reserve that question but also to answer the respondent's contentions in distinguishing the Lewis case.

The respondent clerk argues here and had so argued before the circuit judge that the following language in Lewis distinguishes it from the instant case, 431 S.W. 2d l. c. 121:

"We fully agree that if District C–I had levied a tax upon the same class of property at a different rate in one part of the district than it did in another, Article X, § 3, would have been violated. It will be noted, however, that the constitutional restriction and limitation is upon 'the authority levying the tax.' We think it is significant that the authority *referred to by respondent* is District C–I and that that district did not levy any

tax for the year in question." (Emphasis supplied.)

The circuit judge, relying upon and quoting the first sentence, reasoned that Fort Osage continued as an entity, and assumed that its levy of $4.80 made when only 17 days remained before the annexation was effective, was the only enforceable levy in the surviving district. From this the circuit court said the enforcement of the lower Courtney levy as urged by relators would be in violation of the Constitution. The fallacy of the reasoning is two-fold. Regardless of the assertion that only time needed to elapse to make Courtney a part of Fort Osage, the latter could not, prior to the passage of that time, assert authority over Courtney for any purpose, much less to set a levy based on voter approval. Also the argument overlooks the square holding of the Lewis case following the last cited passage which reads as follows, l. c. 121:

"It is our conclusion that the tax rate fixed by the voters in each of the component districts was valid when approved and did not violate the quoted constitutional provision; that the fact that those districts later ceased to exist and became a part of C–I would not invalidate the levies; that the county collector could properly collect the said taxes levied in the four predecessor districts and pay same to the county treasurer; that the county treasurer could lawfully pay the said amounts to District C–I."

The Supreme Court, by that language, construed Article X, Section 3 to be a constitutional test imposed at the time the levy is set by the voters. Both the levies in this case meet that test and following the construction set forth in Lewis, we hold they are proper levies and must be extended to the properties within the districts when they were levied.

It follows that the order of the circuit court must be reversed and the cause remanded with directions to enter a per-

emptory order of mandamus to the respondent to extend the Courtney and Fort Osage levies in accordance with this opinion.

SHANGLER, C. J., and CROSS, PRITCHARD, and SWOFFORD, JJ., concur.

WASSERSTROM, J., not participating.