515 F.2d 1365
 UNITED STATES of America, Plaintiff-Appellee,
v.
STATE OF MISSOURI et al., Defendants.
UNITED STATES of America, Plaintiff-Appellee,
v.
BERKELEY SCHOOL DISTRICT et al., Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
KINLOCH SCHOOL DISTRICT et al., Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
FERGUSON REORGANIZED SCHOOL DISTRICT R II et al.,
Defendants-Appellants.
 Nos. 75-1051, 75-1064 and 75-1073.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 18, 1975.
Decided May 14, 1975.
 
 Albert Michenfelder, Jr., Clayton, Mo., made argument for Berkeley.
 Marvin S. Wood, Clayton, Mo., made argument for Kinloch.
 Norman C. Parker, St. Louis, Mo., made argument for Ferguson-Florissant.
 Daniel F. Rinzel, U. S. Dept. of Justice, Civ. Rights Div., Washington, D. C., made argument for U. S. A.
 Before GIBSON, Chief Judge, and HEANEY, BRIGHT, ROSS, STEPHENSON, WEBSTER and HENLEY, Circuit Judges, en banc.*
 STEPHENSON, Circuit Judge.
 
 
 1
 Three adjoining school districts appeal from an order of the United States District Court[1] directing that two of them, Berkeley and Kinloch, be annexed to the third, Ferguson-Florissant School District. The purpose of the consolidation is to achieve a meaningful desegregation of Kinloch, a racially segregated and inadequately funded school district which has been established and maintained by state action in violation of the equal protection clause. The district court's findings and conclusions are reported at 363 F.Supp. 739 (E.D.Mo.1973). The final desegregation plan and orders implementing the same have been reported at 388 F.Supp. 1058 (E.D.Mo.1975). We affirm the general desegregation (annexation) plan with some modification of the maximum school tax rate set by the district court.
 
 
 2
 The detailed findings set out in the district court's published opinions will not be repeated beyond that essential to the disposition of the issues raised on appeal.BACKGROUND
 
 
 3
 Prior to 1937 the present Kinloch district and most of the present Berkeley district were one school district known as Kinloch School District No. 18. The schools were then segregated in accordance with Missouri law; one high school and one elementary school were operated for white children, and one elementary school was operated for black children. Subsequently, Kinloch No. 18 was split into two districts, Berkeley district being white and the new Kinloch black. This was done despite the strong opposition of the new Kinloch district.
 
 
 4
 The trial court found that as a direct consequence of the creation and maintenance of Kinloch as a small, all-black school district, educational opportunities provided were markedly inferior to the opportunities offered in the adjoining Berkeley and Ferguson districts, as well as those offered in most other school districts in St. Louis County. For example, (1) in 1970-71 Kinloch had the lowest assessed valuation per pupil in average daily attendance (ADA) of any school district in St. Louis County (Kinloch's assessed valuation was one-third of Ferguson's and one-sixth of Berkeley's); (2) testimony indicated that Kinloch's buildings and equipment were markedly inferior to the buildings and equipment in the other two districts; (3) the number of library books available to the students in Kinloch was significantly lower; (4) average salaries of teachers in Kinloch were considerably lower; (5) a higher faculty turnover rate and a lower percentage of teachers with master's degrees existed as compared to the other two districts; this has had a significant effect on the quality of the educational program offered in Kinloch; and (6) Kinloch's high school students have a more limited choice of curricula.
 
 
 5
 The Missouri Department of Education recognized the differences among the districts by its classification system. Kinloch is classified as AA, while both of the other districts are classified as AAA, the highest rating. In St. Louis County only two other districts have less than a AAA rating. The educational deficiencies of the Kinloch district have been long-standing and have been frequently brought to the attention of county and state officials.
 
 
 6
 The district court further found that on numerous occasions the county and state defendants have proposed reorganization plans for the school districts in St. Louis County, but have not included Kinloch in such plans because it was all-black and the officials believed that the voters of surrounding school districts would reject consolidation with Kinloch for that reason. On one occasion (in 1949) when consolidation of Kinloch with Berkeley, Ferguson and other districts was recommended, the reorganization proposal was defeated by referendum.
 
 The court concluded that
 
 7
 * * * the cumulative effect of the actions of the state and local defendants has been the creation, operation, support, and general supervision by the State of Missouri of a small school district which is unconstitutionally segregated and whose students are denied an equal educational opportunity (citations omitted).
 
 
 8
 363 F.Supp. at 749.
 
 
 9
 The district court ordered the state and other defendants "to develop and implement a plan which will 'achieve the greatest possible degree of actual desegregation, taking into account the practicalities of (the) situation.' " 363 F.Supp. at 750.
 
 
 10
 Thereafter the state and St. Louis County submitted a plan which proposed consolidation of the Berkeley, Kinloch and Ferguson districts. Numerous settlement conferences were conducted in an effort to encourage the local districts to agree on a suitable plan. These efforts were unsuccessful. In October 1974 the court directed the State Board of Education to submit an updated plan.
 
 
 11
 This plan shall envision the annexation by Ferguson-Florissant School District of the Kinloch and Berkeley Districts. In view of the current inflation and financial condition of the country, no new building shall be built and busing of students shall be at a minimum.
 
 
 12
 Orders were also entered permitting the local districts to prepare and file proposed plans which contemplated, in the alternative, consolidation of Berkeley and Kinloch or Kinloch and Ferguson. After a hearing on the various proposals, the court entered a judgment requiring implementation of the three-district plan, now before us, which provides for the annexation of Berkeley and Kinloch to Ferguson.
 
 CONTENTIONS
 
 13
 In this appeal the three appellant school districts agree that Kinloch should be desegregated but differ as to the manner in which this is to be achieved. Berkeley contends the better solution is to annex Kinloch to Ferguson, whereas Ferguson and Kinloch argue that the best plan is to annex Kinloch to Berkeley. They all disapprove of the three-district plan.
 
 
 14
 Berkeley contends it should not be included in the plan to desegregate Kinloch for the reasons that: (1) The facts do not support a finding that the formation of Berkeley in 1937 is the cause of existing segregation in Kinloch; (2) the inclusion of Berkeley in the plan will not accomplish the desegregation of Kinloch; (3) Berkeley has become a unitary system of education and should not be included in any desegregation plan; and (4) the plan will impose an excessive burden on the black residents of Berkeley; Berkeley is now maintaining an effective, integrated school system offering quality education to black and white pupils alike on a tax rate of $3.80 per hundred dollars assessed valuation, whereas the court-ordered plan contemplates a tax rate of $6.03 upon all residents of the new consolidated district; (5) the court erred in not adopting the Ferguson-Kinloch plan because of Ferguson's action by referendum in rejecting the 1949 plan proposed by the county board, which included Kinloch, whereas in 1951 Ferguson, Florissant and St. Ferdinand School Districts reorganized and formed Ferguson; (6) the Ferguson-Kinloch plan will accomplish the desegregation of Kinloch while the inclusion of Berkeley will not; and (7) the Ferguson-Kinloch plan is economically, administratively and educationally more feasible than the three-district plan.
 
 
 15
 Kinloch contends that it was unconstitutionally created, preserved and maintained and that its children have been denied equal educational opportunities. This is not seriously disputed. It further argues that legally and equitably the remedy should be consolidation of Kinloch and Berkeley or the reestablishment of the old Kinloch School District No. 18. The thrust of its argument is that the present Kinloch district was created not by state, county, or other action but by the predecessors of the present Berkeley School District and that, even assuming that the state of Missouri is guilty of some segregative of discriminatory act, its guilt or liability cannot be attributed to the Ferguson district, which at the most is guilty of inaction. Milliken v. Bradley, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974).
 
 
 16
 Ferguson agrees with Kinloch that no constitutional violation on the part of Ferguson has been found or established and, therefore, it should not be included in the desegregation plan. Milliken, supra. It further contends that the plan violates the Tenth and Fourteenth Amendments to the United States Constitution in that it ignores the Missouri Constitution and laws establishing autonomous school districts where directors are elected by the voters and tax rates are set by the voters. The three-district plan ordered by the court provided that two seats on the Ferguson board were declared vacant and were to be filled by one member from the boards of the annexed districts to be selected by them. As previously indicated, the court also ordered that the 1975 school tax rate would be uniform throughout the new district and was fixed at a maximum of $6.03.MERITS
 
 
 17
 This school desegregation action was commenced in September 1971 by the United States pursuant to Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c-6, and the Fourteenth Amendment. The complaint charged that the defendants had created and maintained the Kinloch district as an all-black school district, denying equal opportunity to its students and thereby denying them equal protection of the law. After a hearing the district court made the findings previously summarized herein and ordered the state and other defendants to develop and implement a plan to achieve desegregation. During the next 16 months numerous plans were submitted and efforts made to find a solution acceptable to all concerned. Failing in this, the court, as previously indicated, conducted a formal hearing on the various plans and entered the judgment providing for the three-district annexation now before us. We stayed implementation of the plan and directed that this appeal be expedited and submitted to this court en banc.
 
 
 18
 We have summarized the positions of the appealing school districts and enumerated the substance of their various objections. It is immediately apparent that no one seriously questions the district court's finding that Kinloch was racially segregated by discriminatory state action[2] and its school facilities and educational programs are "markedly inferior to the opportunities offered in the adjoining Ferguson and Berkeley districts, as well as those offered in most other school districts in St. Louis County." 363 F.Supp. at 743. The dispute erupts over the district court's solution to the problem.
 
 
 19
 After considering the numerous plans submitted and the evidence offered in connection therewith, the district court found that the Revised Plan prepared and submitted by the state and county boards of education best achieved the desired goals.
 
 
 20
 Ferguson vigorously protests its inclusion in the desegregation plan because it claims it has in no way participated as a separate school district in action leading to the establishment of Kinloch as a segregated district. Milliken v. Bradley, supra, 418 U.S. at 744-45, 74 S.Ct. 3112. The complaint does not charge that Ferguson's boundaries were established for racial reasons; nor has there been any finding to that effect. Ferguson claims that the only acts chargeable to this district are chargeable vicariously from actions attributable to the state of Missouri directly or through the State Board of Education.[3]
 
 
 21
 The district court found that Ferguson shares responsibility with the other defendants in this case for the discriminatory maintenance of the segregated Kinloch district. It took specific note of language in Milliken, supra, 418 U.S. at 745, 94 S.Ct. 3112 and found it applicable to the situation at hand, stating:
 
 
 22
 * * * The (Supreme) Court went on to say that "an inter-district remedy might be in order where the racially discriminatory acts of one or more school districts caused racial segregation in an adjacent district, or where district lines have been deliberately drawn on the basis of race." (418 U.S. at 745, 94 S.Ct. at 3127.) This latter statement accurately describes what the evidence in this case shows and what this Court has previously found, i. e., an arrangement of school districts which has caused substantial segregation and which is both a vestige of the previously imposed dual school system and a continuing effect of racially discriminatory state actions on the part of the defendants in this case.
 
 
 23
 * * * Moreover, the evidence set out in this Court's previous findings indicate that each defendant, including the Ferguson-Florissant School District, is, to a substantial degree, responsible for the maintenance of Kinloch as a segregated district. The only justification for the maintenance of Kinloch as a small, segregated and inadequately funded district was the opposition, based on racial consideration, of the surrounding districts to numerous proposals to alter that situation, including the rejection by the electorate of the 1949 reorganization plan. This is an instance where the failure to act or resistance for discriminatory reasons to actions tending to correct segregation amounted to a constitutional wrong. See United States v. Board of School Commissioners, Indianapolis, Ind., 503 F.2d 68, 86 (7th Cir. 1974) (cert. denied, --- U.S. ---, 95 S.Ct. 1655, 44 L.Ed.2d 86, 1975).
 
 
 24
 388 F.Supp. at 1059-60.
 
 
 25
 The district court further noted that only three districts were here involved, that the inter-district remedy ordered in this case is substantially consistent with the Missouri law, and that future operation of this district will require no deviation from Missouri law. Thus, the remedy here will not result in extensive disruption of public education in Missouri such as may have resulted in the broad metropolitan plan considered in Milliken.
 
 
 26
 We agree that the record fails to disclose that Ferguson actively participated in the creation of the segregated Kinloch district. Kinloch was created by discriminatory state action and implemented by the establishment of the Berkeley School District in 1937, leaving Kinloch as an all-black school district.
 
 
 27
 However, the district court's findings that Kinloch has been unlawfully maintained by each of the defendants, including Ferguson, for racially discriminatory reasons from 1937 to the present are not clearly erroneous. For instance, the court found that Kinloch was excluded from numerous reorganization plans proposed by the county and state defendants; on the occasion in 1949 when Kinloch was included, the plan was defeated by the electorate;[4] and even though virtually all of the school districts in the north area near Kinloch have been enlarged through annexation since 1948, Kinloch has remained as a small segregated district.[5] Intentional school segregation in the past may not be ignored in assessing the impact of present inaction which has the effect of maintaining segregation. Keyes v. School District No. 1, Denver, Colo., 413 U.S. 189, 211-12, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973). In Oliver v. Michigan State Board of Education, 508 F.2d 178, 182 (6th Cir. 1974), the court stated:
 
 
 28
 A finding of de jure segregation requires a showing of three elements: (1) action or inaction by public officials (2) with a segregative purpose (3) which actually results in increased or continued segregation in the public schools (footnote omitted).
 
 
 29
 The notion that school district lines may be casually ignored or treated as a mere administrative convenience is contrary to the history of public education. But school district lines are not sacrosanct, and if they conflict with the Fourteenth Amendment, federal courts have a duty to prescribe appropriate remedies. Milliken, supra, 418 U.S. at 741-45, 94 S.Ct. 3112. We are satisfied that under all the circumstances in this case the district court had the authority to order the inter-district remedy. Haney v. County Board of Education of Sevier County, Ark., 410 F.2d 920 (8th Cir. 1969); Haney v. County Board of Education of Sevier County, 429 F.2d 364 (8th Cir. 1970); United States v. State of Texas, 321 F.Supp. 1043 (E.D.Tex.1970), modified and affirmed, 447 F.2d 441 (5th Cir. 1971), cert. denied sub nom. Edgar v. United States, 404 U.S. 1016, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972).
 
 REMEDY
 
 30
 After determining that there was a constitutional violation in this case which required some kind of inter-district relief, the district court directed the state and county boards of education to submit plans to correct the situation. Under Missouri law (V.A.M.S. §§ 161.152, 162.161, 162.181) state and county boards of education have responsibilities in connection with school district reorganization. The state board provides technical and advisory assistance, and the county boards have the responsibility of making a comprehensive study of each school district of the county and submitting plans for reorganization of school districts to the state board of education. Reorganization plans are ultimately submitted to the voters for approval.
 
 
 31
 The Supreme Court has made it abundantly clear that school authorities are "clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." Green v. County School Board, 391 U.S. 430, 437-38, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1968). If school authorities fail in their affirmative obligations, only then may judicial authority be invoked to substitute its own plan. Swann v. Board of Education, 402 U.S. 1, 15-16, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).
 
 
 32
 Here the state and county officials submitted the three-district plan approved by the district court. Prior to its submission the officials concerned studied some nine different plans, which included the Berkeley-Kinloch and Ferguson-Kinloch mergers which were also presented to the district court and are again pressed before us as more sound than the one selected. The record reflects that state and county officials rejected the Berkeley-Kinloch plan as a viable alternative because it offered little chance for meaningful desegregation. The Ferguson-Kinloch plan was rejected principally because the assessed valuation of the two districts in relation to average daily attendance would be well below the county average and its chances for financial success would be questionable.
 
 
 33
 The district court, sitting as trier of the facts, found "the Revised Plan (three-district plan) is the least disruptive alternative which is educationally sound, administratively feasible, and which promises to achieve at least the minimum amount of desegregation that is constitutionally required." That finding cannot be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a). See Northcross v. Board of Ed. of Memphis City Schools, 489 F.2d 15, 17 (6th Cir. 1973). We conclude that the district court's choice of the three-district plan was not clearly erroneous and must be upheld.
 
 Tax Rate
 
 34
 The present tax rates in the three school districts are: Berkeley $3.80; Kinloch $4.97; and Ferguson $5.38. The plan submitted by the Missouri State Board of Education and the St. Louis County Board of Education recommended that the court authorize and empower the board of education to set a uniform levy for the new district following a determination by the board of the local tax revenue necessary to provide the quality of educational services desired on a desegregated basis for all pupils, but not to exceed $5.38 per one hundred dollars assessed valuation (the Ferguson rate).
 
 
 35
 The district court found that "in order to effectively operate the desegregated district, as provided under the Revised Plan, a tax rate of $6.03 will be necessary." The court also found that "the tax rate should be uniform throughout the new district and that there was no reasonable possibility that such a tax levy would be approved by the required two-thirds vote in the aftermath of a desegregation order."[6] It therefore ordered that:
 
 
 36
 5. The 1975 school tax levy shall be uniform throughout the new district and shall be set at $6.03. This rate, inclusive of the amount necessary to service the total debt of the enlarged district, shall be deemed to have been approved by the voters for the purposes of Article 10, section 11(c), Missouri Constitution.
 
 
 37
 388 F.Supp. at 1060.
 
 
 38
 Thereafter the State Board of Education of Missouri moved to amend the judgment by reducing the tax rate from $6.03 to $5.38 per one hundred dollars assessed valuation, indicating "that other funds may be available through action of the Missouri Legislature * * *." The district court in denying the motion noted that should additional funds be made available to the consolidated district either through the federal government or the state government, "the Board of the new district, pursuant to Article X, section 11(c), of the Missouri Constitution of 1945, permits the Board to lower the tax rate should that be appropriate." The court further noted what "under the testimony adduced in this case by the State Board of Education, on a levy of $5.38 the consolidated school district would run a deficit of approximately $400,000 annually. It seems to the Court to be unwise to start this consolidated district in such a precarious financial position."
 
 
 39
 Appellants Berkeley and Ferguson attack imposition of the tax levy without a vote of the people, as required by the Missouri Constitution, as being in violation of the Tenth Amendment to the Constitution of the United States.[7] The United States argues that the court did not set a tax rate but merely fixed the maximum levy the board could impose and that, in any event, a district court, sitting as a court of equity in school desegregation cases, has broad authority to remedy constitutional violations. Swann v. Board of Education, supra, 402 U.S. at 15, 91 S.Ct. 1267.
 
 
 40
 It is anomalous to suggest that the district court has the power to disestablish a dual school system but does not have the power to fashion an appropriate remedy. In North Carolina State Board of Education v. Swann, 402 U.S. 43, 45, 91 S.Ct. 1284, 1286, 28 L.Ed.2d 586 (1971), the court stated:
 
 
 41
 (I)f a state-imposed limitation on a school authority's discretion operates to inhibit or obstruct the operation of a unitary school system or impede the disestablishing of a dual school system, it must fall; state policy must give way when it operates to hinder vindication of federal constitutional guarantees.
 
 
 42
 We have likewise held in ordering implementation of a school integration plan that "the remedial power of the federal courts under the Fourteenth Amendment is not limited by state law." Haney v. County Board of Education of Sevier County, supra, 429 F.2d at 368; see also Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 233, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964) (directing that the district court may, if necessary require the supervisors to levy taxes in order to re-open public schools without discrimination).
 
 
 43
 We are satisfied that the district court had the authority to implement its desegregation order by directing that provision be made for the levying of taxes essential to the operation of the new school district. It is our view, however, that deference should be given to the plan submitted in good faith by the state and county officials and which was largely accepted by the court. It was the view of the state that with the receipt of anticipated funds through action of the legislature the present Ferguson rate would be adequate. Maximum consideration should be given the views of the state and local officials concerned so long as they appear compatible with the goals to be achieved. The maximum rate in the new district should be reduced to $5.38 per hundred.[8]
 
 Governing Board
 
 44
 Under Missouri statutes governing annexation of school districts, V.A.M.S. § 162.441, the board of the annexing district is responsible for governing the enlarged district, and its membership remains intact until the elected members' terms expire. The State-County Revised Plan recommended that Ferguson, with 76% of the total enrollment, might be allocated four members and the Kinloch and Berkeley boards be authorized to designate one member each to serve on the six-member board. The district court accepted this recommendation and ordered that two positions on the Ferguson board be declared vacant, these seats to be filled by one member each from the Berkeley and Kinloch boards to be selected by them. In order to provide for an initial period of stable governance for the new district, the court directed that no members of the board of the new school district be elected in the April 1975 school election.[9]
 
 
 45
 We recognize that an interim governing plan must be fashioned by the district court which is fair to all concerned. We find no abuse of discretion on the part of the district court in formulating the plan previously ordered. It may be reinstated with adjustments necessitated by the passage of time since our stay order was entered.
 
 
 46
 The decision of the district court is affirmed except with respect to the maximum tax rate which shall be no higher than that of the annexing district, which is $5.38 per hundred. Upon remand, the court is empowered to fix new dates for accomplishment of the annexation and make other adjustments in accordance therewith.
 
 
 47
 Affirmed in part; reversed in part; remanded for further action in accordance with this opinion.
 
 
 
 *
 Judge Lay did not participate in the above opinion
 
 
 [1]
 The Honorable James H. Meredith, Chief Judge, Eastern District of Missouri
 
 
 [2]
 Berkeley contends that the split of the old Kinloch district was lawful because it preceded Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). This does not remove the state's responsibility to eliminate the de jure segregation. Haney v. County Board of Education of Sevier County, Ark., 410 F.2d 920 (8th Cir. 1969). Likewise, Berkeley's contention that had the old Kinloch district remained intact, it would not be a unitary system today does not change the fact that Kinloch was created and maintained as a segregated school system by state action
 
 
 [3]
 Kinloch concurs with Ferguson's contention that at the most Ferguson is chargeable with inaction
 
 
 [4]
 Several districts were involved; the vote in Ferguson was tied for and against
 
 
 [5]
 Prior to 1948 there were 84 school districts in St. Louis County. At the time of trial this had been reduced to 25 plus one county-wide special district
 
 
 [6]
 Article X, § 11(c) of the Missouri Constitution, V.A.M.S., authorizes increases in tax levies in excess of $1.25 and not more than $3.75 by a majority vote of the people, with levies of over $3.75 requiring a two-thirds majority vote
 
 
 [7]
 It is also pointed out that under a Missouri decision where districts are combined by annexation (V.A.M.S. § 162.441), the existing tax rate in each district continues in force until changed by the voters of the new district. State of Missouri ex rel. Fort Osage School District v. Conley, 485 S.W.2d 469 (Mo.App.1972)
 
 
 [8]
 Prior to the decision in Fort Osage School District, supra, n. 7, several opinions of the Missouri Attorney General held that when one school district annexes another, the voter-approved levy of the annexing district applied to the annexed territory. See e. g., Op.Mo. Att'y Gen. No. 362 (1969). It is also noted that the Missouri Constitution, Article X, § 3, requires uniform tax levies within the territorial limits of the authority levying the tax
 
 
 [9]
 Our stay order rendered moot the ban on the April 1975 election