# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

No. 98-1710

Michael C. Liddell, etc., et al.,       *

                                      *

       Appellees,           *

                                        *

        v.              *

                                        *

Special School District of St. Louis   *

County,                                  *

                                   *   Appeals from the United States

       Appellant.         *   District Court for the

                                              Eastern District of Missouri.

No. 98-1758

The Board of Education of the City   *

of St. Louis, et al.,           *

                                        *

       Appellants,         *

                                        *

        v.              *

                                        *

State of Missouri, et al.,         *

                                        *

       Appellees.         *

No. 98-1814

Michael C. Liddell, etc., et al.,           *
                                                *

                 Appellees,          *

                                                *

                    v.             *

                                                  *

State of Missouri, et al.,            *

                                                *

                 Appellants.       *

No. 98-1930

The St. Louis Career Education     *
District,                             *

                                                *

                 Appellee,         *

                                                *

                    v.             *

                                                  *

Missouri National Education       *
Association,                           *

                                                *

                 Appellant.       *

No. 98-2135

Affton Board of Education, et al.,       *
                                     *

          Appellants,         *
                                     *

             v.              *
                                     *

The St. Louis Career Education     *
District,[1]                             *
                                     *

          Appellee.          *

Submitted:  June 30, 1998

Filed: July 16, 1998

Before MCMILLIAN, HEANEY, and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

The vocational education portion of this desegregation litigation is before us for the tenth[2] time.  When the case was recently before us, we reviewed the district court's

---

[1]The complete captions for the above-entitled cases are on file with the Clerk's Office, United States Court of Appeals for the Eighth Circuit.

[2]See Liddell v. Board of Educ., 142 F.3d 1096 (8th Cir. 1998); Liddell v. Board of Educ., 142 F.3d 1100 (8th Cir. 1998); Liddell v. Board of Educ., 142 F.3d 1106 (8th Cir. 1998);  Liddell v. Board of Educ., 121 F.3d 1201 (8th Cir. 1997); Board of Educ.

decision to assign the responsibility for providing vocational education in this area to a new entity, the Career Education District (CED).  See  Liddell v. Board of Educ., 121 F.3d 1201 (8th Cir. 1997).  Pursuant to the Supreme Court's mandate in Missouri v. Jenkins, 515 U.S. 70 (1995), we remanded the matter to the district court to conduct a formal evidentiary hearing and make comprehensive and detailed findings of fact and conclusions of law.  See id. at 1216.  We advised the court that were it to adhere to its decision to establish a single, independent body to administer vocational education in both the city and the county, the court was to set forth the basis for that remedy and to determine how the remedy would be administered, including how it would be governed, funded, and structured.  See id. at 1217.

Pursuant to this remand, the district court held an evidentiary hearing between January 20, 1998, and February 6, 1998.  It made findings of fact and concluded that the Special School District (SSD) had not achieved unitary status; that the CED would be the sole provider of secondary, public vocational education in the city and county; and that teachers presently employed by the SSD would not retain their tenure rights if hired by the CED.  Sadly, subsequent to this decision, Judge George F. Gunn, Jr., who was responsible for handling this complex school desegregation case for nearly seven years, died.  We commend him for his fairness, his even-handedness in administering this case, and the care and compassion he demonstrated for the children of the metropolitan St. Louis area.  The case has now been assigned to Judge Stephen N. Limbaugh, who has previous experience in this matter.

The State, the SSD, certain St. Louis County school districts, and the Missouri National Education Association appeal Judge Gunn's decision.  The United States, the

---

v. Missouri, 936 F.2d 993 (8th Cir. 1991); Liddell v. Board of Educ., 830 F.2d 823 (8th Cir. 1987); Liddell v. Board of Educ., 822 F.2d 1446 (8th Cir. 1987); Liddell v Board of Educ., 693 F.2d 721 (8th Cir. 1981); Liddell v. Board of Educ., 677 F.2d 626 (8th Cir. 1982); Liddell v. Board of Educ, 667 F.2d 643 (8th Cir. 1981).

4

CED, and the Board of Education of the City of St. Louis (City Board)[3] file appellee briefs. For the reasons stated below, we affirm in part, reverse in part, and remand with directions.

## Background

In Liddell v. Board of Education, 121 F.3d 1201 (8th Cir. 1997), we thoroughly traced the history of this litigation. It is sufficient to repeat here that the State of Missouri in the mid-1960s established two vocational education systems for the St. Louis metropolitan area: one in St. Louis County and the other in the city of St. Louis. In 1980, pursuant to filings by black parents and teachers, the district court found that the State established the two separate school districts to create a dual system of vocational education: a predominantly white district in St. Louis County and a predominantly black district in the city of St. Louis. See Liddell v. Board of Educ., 491 F. Supp. 351, 358 (E.D. Mo. 1980). The district court also found that the State had the power to merge the dual system and that the State's failure to do so was "part and parcel of its failure to take affirmative steps to eradicate root and branch the dual system it once formally mandated." Id. The court directed the State, the United States, and the City Board to develop a plan for "the consolidation or merger and full desegregation of the separate vocational education programs operated by the [SSD] and the school district of the city of St. Louis, for implementation in the 1981-82 school year." Id. at 353. We affirmed. See Liddell v. Board of Educ., 667 F.2d 643, 651 (8th Cir. 1981).

---

[3]The City Board argues that the district court did not abuse its discretion in creating the CED and in removing the SSD from the governance of vocational education, but argues, inter alia, that the court erred in failing to set an initial term of duration for the CED and in failing to award city residents an equal number of votes on the CED Board of Education.

In 1981, the parties negotiated a settlement agreement that the district court approved after conducting an evidentiary hearing. The voluntary plan permitted the SSD and the City Board to operate their own vocational education schools for a period of five years with each being responsible for meeting court-established desegregation goals. The State, as the primary constitutional violator, was given responsibility to fund elements of the plan. We affirmed and noted that if the voluntary plan did not result in the integration of the vocational schools, the district court could order a complete merger of the city and county systems. See Liddell v. Board of Educ., 677 F.2d 626, 636 (8th Cir. 1982).

In 1986 and 1987, the district court adjusted the voluntary plan to permit continued city-operated city schools and county-operated county schools, allowing students to attend schools in either district, and to require the State to pay the transportation costs for interdistrict transfers. On appeal, we again reminded the district court that if the voluntary plan failed to meet the court-established desegregation goals, the district court had the authority to direct a complete merger with a unified governing and taxing structure. See Liddell v. Board of Educ., 822 F.2d 1446, 1460 (8th Cir. 1987).

When the voluntary plan failed to meet the court-established desegregation goals, the district court directed the parties to work with St. Louis Community College to develop a vocational education system in which the community college would be the sole provider of vocational education for the city and county. See L(2293)89. Turf battles between the city and county led the community college to withdraw as a potential sponsor of vocational education. See Liddell v. Board of Educ., 733 F. Supp. 1324, 1325 (E.D. Mo. 1990).

In 1990, the district court again voiced its lack of confidence in the ability of either the City Board or the SSD to manage a secondary, vocational education system that met the needs of all students and parents. See id. Nonetheless, focusing on the

need for excellence in education, the district court proposed a restructured system whereby the SSD and the City Board would each operate a racially-balanced program and, through incentives and innovations, compete for students.  See id. at 1328-29.  The State was again required to pay all interdistrict transportation costs.  See id. at 1330.[4] No appeal was taken.

Less than a year later, the same district court judge determined that the 1990 plan was not working and decided that a single, unified provider of vocational education was the only way to ensure that a quality, integrated vocational education would be provided to all students of the St. Louis metropolitan area.  See Liddell v. Board of Educ., 758 F. Supp. 499, 503-05 (E.D. Mo. 1991).  The district court designated the SSD as the sole provider beginning with the 1991-92 school year and ordered the State to pay interdistrict transportation and other costs.  See id.[5]

---

[4]The court stated:

> The City Board will renovate Southwest as a secondary vocational-education facility.  The renovation costs of Southwest will be divided equally between the State and the City Board.
>
> . . . .
>
> The Court realizes that there will be at least an interim period of instability until Southwest is operational as a secondary vocational-education school.  However, the Court believes that in the long run, its decision will facilitate a quality integrated vocational education for all St. Louis children who desire one.

Id. at 1329, 1330.

[5]The district court stated:  "Black and white children of the metropolitan St. Louis area deserve a quality integrated vocational education system now; not in two, three or ten years.  The Special School District is willing, ready and able to comply with the Court's directive."  Id. at 505.

7

The City Board and the Liddell plaintiffs objected to the plan and appealed. See Board of Educ. v. Missouri, 936 F.2d 993 (8th Cir. 1991). Their primary concern was that the SSD Board of Education was comprised of county-elected officials and thus did not have the interests of the city students at heart. See id. at 997. The City Board was also concerned that the SSD lacked the financial resources necessary to provide a quality, integrated program of vocational education. See id. at 998-99. In response to that concern, counsel for the SSD assured this court at oral argument that the SSD had the financial resources to maintain a quality, integrated vocational education program for both county and city students. Counsel stated that, as of the date of oral argument, the SSD had a budget reserve of $50 million and that it had the funds to operate the vocational program on a consolidated basis. Finally, counsel represented that the SSD was committed to establishing a city site. Based on these assurances, we affirmed. See id. at 999. We noted that if additional funds were required, the district court had the power to ensure that the funds necessary to provide a quality, integrated vocational education were provided. See id.[6] See also Liddell v. Board of Educ., 822 F.2d 1446, 1457 (8th Cir. 1987).

After the SSD became the sole provider, it proposed a three-phase plan. See Liddell, 121 F.3d at 1214. Under phase one, the SSD would provide twenty-five satellite programs, many of which would be dispersed throughout the city. See G(1002)93. Under phase two, the SSD would establish programming clusters. See id. Under phase three, the SSD would construct a new, comprehensive, educational facility in the city. See id. The Metropolitan Coordinating Council (MCC), appointed to monitor compliance with the district court's order, was directed to continue its

---

[6]In reality, the SSD was operating at a deficit as early as 1990, and in meeting these deficits, the reserve funds mentioned by counsel at oral argument were depleted.

monitoring functions. In addition, the MCC membership was amended to include a representative of the City Board.[7]

On March 22, 1995, the MCC and the SSD issued a joint report, recognizing that the opportunities for city and county students for vocational education were uneven. See G(1511)95. They recommended the appointment of a planning body to develop the specific operating details for a comprehensive vocational education program. See id. Specifically, they recommended the consideration of a single, independent entity to administer vocational education for city and county students and the establishment of one or more four-year academies, with at least one to be located in the city. See id.

Shortly after the joint report was issued, the composition of the SSD Board changed. The new board opposed any proposal that would result in the SSD losing control over vocational education. See Liddell, 121 F.3d at 1215. It further voiced its concern over the district court's intention to create the CED. See id.

---

[7]Of the twenty-five satellites proposed, MCC found that only three would be available in 1994-95. See id. MCC found that, after two years, only sixteen students were participating in the city site program. See id. Members of the MCC visited each of the satellites in the city and reported that while the instructors were enthusiastic and committed, the programs received little support from the SSD. See id. The MCC stated:

> In summary, very little of a meaningful nature has been accomplished by Special School District in implementing its "City Site Plan." The record is replete with promises of programs in the city of St. Louis. However, these promises have been proven hollow by the actual performance of the Special School District over a period that is now almost three years long.

Id. at 5.

On April 26, 1995, the district court, agreeing with the joint committee's report, stated that the creation of a new, independent, governing entity to be called the CED would best ensure the delivery of a quality, integrated vocational system for all of the students in the St. Louis area. See id. (citing G(1562)95). Accordingly, it appointed a planning coordinator who was to report to the court on a proposed schedule and budget for the planning process. See id. It ordered that the SSD continue to be the sole provider of vocational education for the 1995-96 school year. See id.

On March 21, 1996, the district court ordered the SSD to make certain payments to the CED for interim financing. See Liddell, 121 F.3d at 1215 (citing G(2084)96). On June 25, 1996, the district court created the CED and named the initial members of its Board of Education and directed the State, the City Board, and the SSD to make equal payments to the CED for the operation of the vocational system. See id. (citing G(2122)96.) The parties agreed to the interim payments, but because the district court created the CED without an evidentiary hearing, the district court's order creating the CED was appealed.[8] We remanded to the district court for a formal hearing to be followed by comprehensive and detailed findings of fact and conclusions of law. See Liddell, 121 F.3d at 1216.

On remand, the district court held an evidentiary hearing beginning on January 20, 1998 and ending on February 6, 1998. All parties to this appeal participated. The district court found:

---

[8]On July 10, 1996, the SSD filed a motion seeking a declaration that the vocational education system had achieved unitary status and requesting the court to relinquish control of the system and return control of the vocational education system to state and local authorities. See id. The district court denied this motion without a hearing. See id. (citing G(2288)97).

10

(1)  During its years as sole provider of secondary vocational education, SSD achieved a racially integrated student body at the three vocational county schools it operated.

(2)  There is no evidence of vestiges of prior discrimination at the three county schools in question in the racial composition of faculty and staff, transportation, extra-curricular activities and facilities.  SSD has not discriminated against students on the basis of race or city/county residence in any of its policies and procedures at these schools.

(3)  There is no significant gap along racial lines in the achievement levels of students at the three vocational education schools operated by SSD.

. . . .

(5)  There is a need for a four-year vocational education high school in the City of St. Louis. . . .  [I]f the right programs were offered at a city site[,] more black city students and parents would choose vocational education.

(6), (7) The need for a vocational education high school in the city [is not satisfied by alternatives offered by the appellants].

. . . .

(10)  During its years as sole provider, SSD did not extend good faith efforts to establish a facility with its own resources in the city for vocational education. . . .  The credible evidence established that SSD never had the intention of establishing a city site.  The May 1994 request by SSD for Court permission to proceed with developing such a site, at the State's expense, was not made in good faith.

(11)  During its years as sole provider, SSD did not provide a quality vocational education program. . . .

11

(12)  There is no evidence that SSD made a good faith effort to upgrade identified deficiencies in its vocational education programs during the years it was sole provider. . . .

. . . .

(17)  A consolidated system for the provision of vocational education is preferable to two separate systems, one providing programs in the county and one in the city. . . .

(18)  The creation of a new independent governing entity would best ensure the delivery of a quality integrated vocational education system for all high school students in the St. Louis area.

. . . .

(20)  During its one-and-one-half years of operating the Career Academy in the city, CED has been successful in recruiting an integrated student body, drawing students from both the city and county.

(21)  The educational program currently offered at CED is limited to ninth and tenth grades and is pre-vocational in nature.  The full four-year plan is a vocational education plan that has been used successfully in other school systems with student populations similar to that of the St. Louis area.

(22)  CED has the administrative and educational capabilities to assume responsibility as sole provider of vocational education beginning with the 1998-99 school year, and to deliver a quality integrated program for all area high school students.  Designating CED, with its innovative educational program, provides the best hope that the vocational education program can achieve unitary status in the near future.

(23)  The[re] was no convincing evidence that the financial impact on SSD of losing vocational education would hamper its ability to continue to provide excellent special education services.

(24)  There was no dispute that, if CED were to be designated sole provider, a tuition-based funding mechanism, following to the extent practicable State laws governing the funding of other vocational education systems, would be the most equitable and reasonable funding mechanism.

. . . .

(26)  Control of the three county vocational education facilities should reside with the sole provider of vocational education.

(27)  Southwest High School is adequate for the Career Academy for at least the 1998-99 school year.

(28)  Tenured SSD vocational education teachers who are hired by SSD would prefer to retain their tenure rights. This, however, would hamper CED's ability to administer a quality vocational education program.

G(2732)98, at 3-8.

The district court concluded:

(1)  This Court's supervision of the local school system is a "temporary measure to remedy past discrimination."  The desegregation decree should thus be dissolved after the local authorities have achieved "unitary status" by complying "in good faith" with the decree for "a reasonable period of time," and by eliminating "the vestiges of past discrimination to the extent practicable."  See Board of Educ. v. Dowell, 498 U.S. 237, 245-50 (1990).

. . . .

(5)  The quality of the vocational education program is a relevant factor in considering whether SSD has achieved unitary status during its years as sole provider.  "The plan ultimately approved by the district court

13

should promise integration, quality, and stability . . . ." Liddell v. Board of Educ., 822 F.2d 1446, 1457 (8th Cir. 1987).

(6) SSD's failure to exert good faith efforts to establish a city vocational education facility and failure to provide a quality program preclude a conclusion that SSD has achieved unitary status.

(7) The designation of two separate vocational education providers, one operating schools in the county and one operating a school in the city, would be an inappropriate remedy in this case at this time.

(8) This Court has the authority to create an entity to serve as the sole provider of secondary vocational education to assure that the goals of this case will be met. From the early years of this case, it has been recognized that this Court has the power to order a merger of vocational education programs in the metropolitan area with a unified governing and funding structure. See Liddell v. Board of Educ., 822 F.2d 1446, 1459-60 (8th Cir. 1987); Liddell v. Board of Educ., 677 F.2d 626, 628 (8th Cir. 1982); see also United States v. State of Mo., 515 F.2d 1365 (8th Cir. 1975).

. . . .

(10) To the extent possible, funding of CED should be modeled on existing State laws applying to Area Vocational Training Schools (AVTS). (Footnote omitted.) Funding of CED shall thus be tuition based.

(11) Governance of CED should be by a Board of Education representative of county and city residents.

(12) SSD vocational education teachers who accept employment with CED are subject to the statutory probation period of [the Missouri Teacher Tenure Act, Mo. Rev. Stat. §§ 168.102-130].

G(2732)98, at 9-11.

14

In short, the court stated that: "CED has proven, albeit in short time, that it has the vision and capability to achieve the Court's target for a quality integrated vocational education program for the St. Louis metropolitan area." Id. The court further said: "SSD was given the opportunity to provide the vocational education program. It failed. Now is the time to pass the responsibility to another. The Court chooses CED." Id.[9]

---

[9]The district court directed that:

[A]s of July 1, 1998, the St. Louis Career Education District (CED) shall be the sole provider of secondary public vocational education in the St. Louis area.

[B]y April 30 of each year, beginning with April 30, 1998, CED shall submit a proposed budget for the following school year showing amounts by fund and by budget function. . . . The tuition rate will be based upon the approved budget with SSD paying tuition for county resident students, and City Board paying tuition for city resident students. . . .

CED shall be governed by a Board of Education consisting of nine residents of St. Louis City and St. Louis County. The current board of seven members, five of whom reside in St. Louis County and two of whom reside in St. Louis City shall remain in office through the 1998-99 school year. John McDonnell shall continue as President of the Board. The Court will appoint two new additional members before July 1, 1998 (the start of the next school year), who shall reside in the City of St. Louis. . . .

. . . .

CED shall apply to the State of Missouri for AVTS status on or before April 15, 1998.

SSD shall lease North Technical School, South Technical School and West Technical School to CED at the rate of $1.00 per site per year. CED shall have exclusive use of these sites and shall assume full responsibility for their maintenance.

15

The State, the SSD, and certain St. Louis County school districts appeal the district court's decision and make two important assertions: that the present vocational education program for the city and the county has achieved unitary status; and that even if it has not achieved such status, the creation of the CED is a remedy neither permitted by the United States Constitution nor authorized by state law.

## Has the Vocational Education Program for the City and the County Achieved Unitary Status?

We agree with the district court that there are no vestiges of de jure discrimination at the three county vocational schools in the racial composition of faculty and staff, transportation, extracurricular activities, and facilities. We also agree that the SSD's policies or procedures do not discriminate against students based on their race or city/county residence at these schools. Thus, under Freeman v. Pitts, 503 U.S. 467 (1992), and Green v. County School Board, 391 U.S. 430 (1968), the SSD has achieved partial unitary status in operating the vocational education program in the county schools.[10] Moreover, there is no showing in the record that the SSD is likely

---

Id.

[10]As the Supreme Court noted, the factors supporting a finding for partial unitary status are

> whether there has been full and satisfactory compliance with the decree in those aspects of the system where supervision is to be withdrawn; whether retention of judicial control is necessary or practicable to achieve compliance with the decree in other facets of the school system; and whether the school district has demonstrated, to the public and to the parents and students of the once disfavored race, its good-faith commitment to the whole of the court's decree and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance.

16

to return to its former ways with respect to the county vocational education schools. See Board of Educ. v. Dowell, 498 U.S. 237, 247 (1991).

The district court found, however, and we agree, that full unitary status has not been achieved and will not be achieved until a four-year, vocational education high school in the city of St. Louis has been established and operated for a reasonable period of time. The opinions of the district court and this court show that the establishment of a city vocational high school is causally related to the original constitutional violation, a state-created dual system of vocational education: a predominantly white district in St. Louis County and a predominantly black district in the city.

The district court directed the State, the United States, and the City Board to develop a plan for the consolidation or merger and full desegregation of the separate vocational education systems. See, e.g., Liddell v. Board of Educ., 491 F. Supp. 351, 353 (E.D. Mo. 1980), aff'd, 667 F.2d 643, 651 (8th Cir. 1981). As chronicled above, the district court has patiently worked with all parties to achieve this goal. Initially, it approved a settlement agreement that permitted the SSD and the City Board to operate their own vocational education schools for a period of five years with each being responsible for meeting court-established desegregation goals. When that solution failed, the district court directed the parties to work with St. Louis Community College to develop a vocational education system under which the college would be the sole provider of vocational education for the city and county. When that failed, the district court again directed that the SSD and the City Board each operate a racially-balanced program and, through incentives and innovations, compete for city and county students with the State paying the interdistrict transportation costs. When that failed, the district court designated the SSD as the sole provider of vocational education beginning with the 1991-92 school year and again ordered the State to pay interdistrict transportation and other costs. Consistent with that designation, the SSD proposed a plan under which

---

Freeman, 503 U.S. at 491.

satellite programs would be initially established with a new, comprehensive, city educational facility to follow. Unfortunately, the SSD did not follow through on its proposal.

As noted above, the SSD and the MCC issued a joint report recommending the appointment of a planning body to develop a comprehensive vocational education program, including the establishment of at least one four-year, city academy. When the composition of the SSD board changed, the SSD no longer supported this alternative.

The district court found that in light of the above facts and history of this litigation, the SSD did not achieve complete unitary status. We agree with the district court that complete unitary status will not be achieved until such time as a vocational high school in the city is firmly established and functioning.[11]

## The Creation of the CED

The district court, having tried a number of alternatives, none of which succeeded, directed that a new entity be created to provide secondary vocational education to students living in the city and the county. The district court provided for its governance and directed that it be funded by tuition to be paid by the SSD for the county students attending the CED and by the City Board for city students attending the CED.

---

[11]Appellants argue that the district court closed the O'Fallon School in the city of St. Louis to remedy the constitutional violations in the vocational education system. The record reveals that the O'Fallon closing was not viewed by the district court in this light. Rather, the district court has consistently viewed the re-establishment of a vocational high school in the city as an essential component of the remedy for the dual-operated system of vocational education.

18

We appreciate the district court's attempts since 1980 to provide a vocational education for all city and county students in a manner fully consistent with the United States Constitution. It has realized how important vocational education is not only to the students, but to the St. Louis County metropolitan area. It fully understands that if industry in the St. Louis County metropolitan area is to be competitive in the world economy, it must provide vocational education opportunities for the future employees of industry. We share the district court's concerns.

We are admonished by the Supreme Court that remedies should be limited to the extent necessary to cure constitutional violations and that we should defer to the State to the extent possible. See Dowell, 498 U.S. at 247-48; Jenkins, 515 U.S. at 99; Freeman, 503 U.S. at 498-99. Here, the Missouri legislature has recognized that the SSD had serious problems in providing vocational education to the St. Louis metropolitan area. In 1996, it enacted legislation empowering the SSD to operate vocational education programs until June 30, 1997, and the following year, it extended the period until June 30, 1998. See Mo. Rev. Stat. § 162.857.2(5) (West Supp. 1998). In 1998, the legislature again extended the period until June 30, 2000. See 1998 Mo. Legis. Serv. 488 (West). This legislation leads us to conclude that the legislature is not only sensitive to the need for quality vocational education in the St. Louis metropolitan area, but that it understands that the SSD may not, at least as presently composed, be the entity best suited to provide that education. Thus, confident in the wisdom of the legislature, we leave to it the question of whether to designate a new entity to provide a unified vocational education program in the city and the county, or alternatively, to permit the SSD to remain the designated entity with changes in governance that will ensure that a unified vocational education system will be operated with a city site.

Realizing that time is of the essence and understanding that vocational education must continue, we order that:

19

1.  The CED shall continue to provide vocational education at the present city site, Southwest High School, for the 1998-99 school year; and the SSD shall continue to provide vocational education at the county sites for the 1998-99 school year under the same conditions as provided in the 1997-98 school year.  Thereafter, the SSD or another entity created or designated by the State of Missouri shall be the sole provider of high school vocational education for the city and the county.  The power lies with the legislature to create a new entity to be the AVTS provider for the area, or to designate the SSD as that provider, and to take action to broaden the governance base of the SSD so that the city and possibly the State are represented in the governing board.[12]  We repeat that we are confident that the State of Missouri will take the necessary steps to reach this goal.

2.  The SSD is directed to meet promptly with the City Board, the CED, and the State to plan a comprehensive vocational high school in the City of St. Louis at the Southwest High School site and thereafter to renovate Southwest High School to meet the needs of the students who attend that facility.  The new facility shall be financed by the SSD, the State, and the City Board each contributing an equal share to the cost of the facility with each entity having responsibility for determining how to fund its share.  See Missouri v. Jenkins, 495 U.S. 33, 57-58 (1990).

3.  Beginning with the 1999-2000 school year, the vocational education system established pursuant to this opinion shall, consistent with the district court's opinion, be financed by tuition paid by the City Board and the SSD or its member school districts, together with such federal and state aid or private grants that may be available.  The State shall continue to pay the transportation costs of interdistrict transfers as it has in the past.  As we have noted, student transportation is one of the keys to racially-balanced student bodies in the county and city-based vocational high schools.

---

[12]See Mo. Rev. Stat. § 178.420-580 (West Supp. 1998).

4. The curriculum for the 1999-2000 school year shall be established by the vocational education provider designated by the State. While ultimate curriculum decision-making authority rests in the designated provider, it would be a mistake not to consult with the State, the City Board, and the county schools. Also, the CED has gained valuable experience and has introduced innovative programs designed to meet the vocational needs of the students in the 21st century. It would also be a mistake not to involve the CED, including its administrators and Board, in the planning process and to make use of the expertise it has to offer in this process.

5. On at least three occasions, we have stated that the vocational education that is offered to students be one of quality. See Liddell, 121 F.3d at 1217; Liddell, 936 F.2d at 999; and Liddell, 822 F.2d at 1457. We specifically noted, however, in a recent opinion, Liddell, 121 F.3d at 1216-17 n.2, that we did not hold or imply that each of the twelve ordered goals as outlined in the March 7, 1996 report of the Vocational Education Oversight Office must be achieved to meet constitutional requirements for the establishment of a unitary district. On the basis of the record before us, we are convinced that the State of Missouri's standards as to what constitutes a quality education are consistent with the United States Constitution. We, therefore, do not affirm that portion of the district court's opinion holding that the twelve outcome-based "quality education goals" it adopted in 1993 are constitutionally required. We are confident that the programs offered at the various sites will, to the extent possible, avoid duplication and will meet the needs of both the students and the community.[13]

6. We agree with the district court's conclusion that its supervision of the local school system is a temporary measure to remedy past discrimination. The

---

[13]The State provides that the State Board of Education shall establish standards, annually inspect, and approve all public vocational schools. Vocational schools are entitled to state funding so long as they are approved as to site, plant, equipment, qualifications of teachers, admission of pupils, courses of study, and methods of instruction. Mo. Rev. Stat. § 178.530 (West Supp. 1998).

desegregation decree should be dissolved after the local authorities have achieved unitary status by complying in good faith with the decree for a reasonable period of time by eliminating the vestiges of past discrimination to the extent practicable. In this case, that means local authorities will be found to have achieved unitary status when they have established a city site and have operated that site, as well as the county sites, for a reasonable period of time in a constitutional manner, and there is no showing in the record that the entity operating the St. Louis metropolitan area vocational education program is likely to return to its former ways.

## Tenure Rights of Vocational Education Teachers

In view of our decision in this matter, the issue of tenure rights is moot for the immediate future. If the Missouri legislature creates another entity to operate vocational education in the St. Louis metropolitan area, that entity will determine the tenure rights of those teachers who are employed in the system, whether they are employed at a city or county site.

## Conclusion

The judgment of the district court is affirmed in part, reversed in part, and remanded to the district court with directions for action consistent with this opinion. Each party to this appeal, with the exception of the Caldwell and Liddell plaintiffs, shall bear their own costs. The costs of the Caldwell and Liddell plaintiffs shall be borne equally by the State of Missouri, the City Board, and the SSD. The court's mandate shall issue forthwith.

22

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.