388 F.Supp. 1058 (1975)
UNITED STATES of America, Plaintiff,
v.
STATE OF MISSOURI et al., Defendants.
No. 71 C 555 (1).
United States District Court, E. D. Missouri, E. D.
January 9, 1975.
Donald J. Stohr, U. S. Atty., St. Louis, Mo., David L. Norman and Daniel F. Rinzel, Civil Rights Div., Dept. of Justice, Washington, D. C., for plaintiff.
Marvin S. Wood, Clayton, Mo., John C. Danforth and D. Brook Bartlett, Jefferson City, Mo.; Norman C. Parker, St. Louis, Mo.; Ziercher, Hocker, Tzinberg, Human and Michenfelder, Albert A. Michenfelder, Jr., and Edward K. Fehlig, Clayton, Mo; Thomas W. Wehrle and David V. Collignon, Clayton, Mo., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, Chief Judge.
On August 27, 1973, this Court entered an opinion and order (363 F.Supp. 739), which held that black students in the Kinloch School District had been unlawfully discriminated against because of their race and directed the State and County defendants to prepare a plan to eliminate such discrimination. Pursuant to this order, a plan was prepared and filed by the State and County boards of education on November 21, 1973, which proposed consolidation of the Kinloch, Berkeley, and Ferguson-Florissant School Districts. A revised version of this plan (hereinafter the Revised Plan) was submitted on November 15, 1974, and updated on December 31, 1974. Alternative desegregation plans have also been submitted by other parties.
*1059 The Court, having considered these plans, the evidence presented by the parties concerning these plans, and arguments of counsel, makes the following findings.
Of the plans presented to the Court, the Revised Plan is the least disruptive alternative which is educationally sound, administratively feasible, and which promises to achieve at least the minimum amount of desegregation that is constitutionally required.
This Court's order of October 4, 1974, which directed the State Board of Education to submit the Revised Plan, required that the "busing of students shall be at a minimum." Although some increase over the number of students currently transported in the three affected districts is required under the Revised Plan, this additional transportation is necessary in order to effectively desegregate. No health or safety hazard is presented by this additional transportation. Alternative plans submitted by local school district defendants, insofar as they rely on geographic zoning, will not achieve desegregation.
Defendant Ferguson-Florissant School District offered testimony that in order to effectively operate the desegregated district, as provided under the Revised Plan, a tax rate of $6.03 will be necessary. There was also testimony that the tax rate should be uniform throughout the new district and that there was no reasonable possibility that such a tax levy would be approved by the required two-thirds vote in the aftermath of a desegregation order. The Court accepts this testimony as accurate. Therefore, in order to insure the administrative feasibility of operating the new desegregated district, the Court's order provides for a tax rate of $6.03. The board of the new district will, of course, retain authority to adjust the tax levy in accordance with the provisions of Missouri Law.
The Court has legal authority to order implementation of the Revised Plan.
Milliken v. Bradley, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069, 1974, dealt with the question of inter-district relief, but the precise question in that case involved "the validity of a remedy mandating cross-district or inter-district consolidation to remedy a condition of segregation found to exist in only one district." (418 U.S. 744, 94 S.Ct. at 3127) The Court went on to say that "an inter-district remedy might be in order where the racially discriminatory acts of one or more school districts caused racial segregation in an adjacent district, or where district lines have been deliberately drawn on the basis of race." (418 U.S. 745, 94 S.Ct. at 3127) This latter statement accurately describes what the evidence in this case shows and what this Court has previously found, i. e., an arrangement of school districts which has caused substantial segregation and which is both a vestige of the previously imposed dual school system and a continuing effect of racially discriminatory state actions on the part of the defendants in this case.
The Ferguson-Florissant defendants challenge their inclusion in the Revised Plan on the grounds that the Ferguson-Florissant District was not directly involved in the creation of the Kinloch District as an all black district. However, it is significant that the Supreme Court in the Milliken case cited approvingly (418 U.S. 717, 94 S.Ct. 3112) two lower court cases[1] which mandated inter-district desegregation where the separate systems were an historic tool of dualism even though specific acts of discriminatory conduct were not found to have been perpetuated by adjoining school districts. The Court finds no distinction between these cases and the instant case. Moreover, the evidence set out in this Court's previous findings indicate *1060 that each defendant, including the Ferguson-Florissant School District, is, to a substantial degree, responsible for the maintenance of Kinloch as a segregated district. The only justification for the maintenance of Kinloch as a small, segregated and inadequately funded district was the opposition, based on racial consideration, of the surrounding districts to numerous proposals to alter that situation, including the rejection by the electorate of the 1949 reorganization plan. This is an instance where the failure to act or resistance for discriminatory reasons to actions tending to correct segregation amounted to a constitutional wrong. See United States v. Board of School Commissioners, Indianapolis, Ind., 503 F.2d 68, 86 (7th Cir. 1974).
In addition, in this case, only three districts, not fifty-two districts, are involved. The inter-district remedy ordered in this case is substantially consistent with Missouri law and future operation of the district will require no deviation from Missouri law. Thus, the remedy in this case will not result in extensive disruption of public education in Missouri such as may have resulted in the broad metropolitan remedy considered in Milliken. See Newburg Area Council v. Board of Education, 489 F.2d 925 (6th Cir., December 11, 1974).
Judgment will be entered in accordance with these findings.

JUDGMENT
Findings of fact and conclusions of law, dated this date, are hereby incorporated in and made a part of this judgment.
It is hereby ordered, adjudged, and decreed:
1. The defendants, their employees, agents, successors, and all those acting in concert or participation with them, are hereby permanently enjoined from discriminating against any person because of race, color, or national origin in the operation of the public schools of the territory encompassed by the Kinloch, Berkeley, and Ferguson-Florissant School Districts.
2. In order to effect an orderly desegregation, the procedure shall be substantially that provided by the Statutes of Missouri pertaining to an annexation of a six-director school district by another, RSMo 1969, V.A.M.S., section 162.441 et seq.; the Berkeley School District and the Kinloch School District shall be annexed to the Ferguson Reorganized School District R-2 (Ferguson-Florissant School District), and the boundary lines of the Ferguson Reorganized School District R-2 shall be changed effective February 1, 1975, to include the Berkeley School District and the Kinloch School District.
3. The Berkeley School District and the Kinloch School District shall deliver all property, records, books, and papers, and transfer all funds and moneys to the Ferguson Reorganized School District R-2 on or before February 1, 1975, following the entry of this order. The Ferguson Reorganized School District R-2 shall faithfully perform all existing contracts and shall assume all legal obligations of the Berkeley School District and of the Kinloch School District.
4. Any and all outstanding general obligation bonds of each of the districts shall be obligations pursuant to and shall be retired in accordance with RSMo Stat.1969, V.A.M.S. section 164.051, and any other applicable Missouri Statutes.
5. The 1975 school tax levy shall be uniform throughout the new district and shall be set at $6.03. This rate, inclusive of the amount necessary to service the total debt of the enlarged district, shall be deemed to have been approved by the voters for the purposes of Article 10, section 11(c), Missouri Constitution, V.A.M.S.
6. The seats of two Ferguson-Florissant members of the Board of Education to be designated by the Ferguson-Florissant Board and reported to the Court are hereby declared vacant as of February 1, 1975. These seats shall be filled *1061 by one member of the Kinloch Board and one member of the Berkeley Board, who shall be designated by their respective boards and reported to the Court by February 1, 1975. In the event any of the required designations are not made, the Court shall make the designations. The Board of Education of the Ferguson Reorganized School District R-2 shall thereupon name the said two designees to replace the two members whose seats shall have been vacated. The designees of the Berkeley and Kinloch Boards shall serve until the election in April 1978. The four remaining members of the Ferguson-Florissant Board will draw lots immediately to determine the length of their individual terms of office, with two members serving two years and two serving one year.
7. In order to provide for an initial period of stable governance for the new district, no members of the Board of Education of the new school district shall be elected in the school election in April 1975. The defendant State of Missouri, its officers, and agencies, and the defendant school districts, Kinloch School District, Berkeley School District, and Ferguson Reorganized School District R-2, their officers, agents, and employees are hereby enjoined from accepting any declarations of candidacy or in any way conducting any school election for the election of members of the respective Boards of Education at the general school election in April 1975.
8. The defendants are further enjoined to implement the Plan of Desegregation submitted by the State and County Boards of Education, as revised on November 15, 1974, with respect to assignment of pupils, placement of teachers, administrative staff and other employees, transportation of pupils, closing and maintenance of school buildings, affirmative action, curriculum, educational services and extracurricular activities, and community education so as to be in substantial compliance therewith at the commencement of classes for the school year 1975-1976 on or about September 1, 1975, with the following clarifications:
(a) School officials shall retain flexibility in their authority to make student assignments. However, no deviation from student assignment, as provided under the Revised Plan, shall be permitted which results in a lesser degree of integration in any school than that projected under the Revised Plan. Transfers of students to schools other than assigned schools shall be permitted only when the student transfers from a school in which the student's race is in a majority to a school in which the student's race is in a minority.
(b) The primary burden of desegregation under the Revised Plan unavoidably falls on black students because of the educational necessity, recognized by all the parties, of terminating the present use of three school facilities located in the Kinloch School District.[1] In order to minimize this burden as much as possible, the following steps shall be taken:
(1) If school authorities elect to use the grouping option for the Kinloch, Holman, and Springdale Elementary Schools, as provided under the Revised Plan, Kinloch Elementary shall be assigned lower elementary grades instead of grades five and six.
(2) The Smith Elementary School, located in the Berkeley District, shall remain open and be utilized in accordance with the original plan submitted by the State and County Boards of Education on November 21, 1973, except that grades five-six shall be assigned to the Smith School.
(3) Every effort shall be made to utilize the Kinloch High School and Kennedy Junior High facilities for educational and community purposes. (See Rev.Mo.Stat., § 177.091) *1062 If construction of new school facilities is deemed necessary in the future, consideration must be given to construction of such facilities in locations which will lessen the burden of transportation on black students.
(4) School authorities shall take steps to insure that black students transferred to formerly white schools are made to feel a part of such schools. To this end, consideration shall be given to renaming such schools, changing school colors, etc., and the preservation of Kinloch High School trophies and awards. Non-discriminatory regulations and procedures shall be developed concerning disciplinary measures.
(5) Prior to the implementation of student and faculty desegregation, school authorities shall establish in-service training programs to prepare administrators, teachers, board members, students, and the community for desegregation.
(c) On or before July 1, 1975, school authorities shall cause to be filed with the Clerk of this Court, with copies served on counsel for plaintiff and the State and County Boards of Education, a report showing the names, race, and positions of all faculty and staff members in the new district who are proposed to be dismissed or demoted for the 1975-76 school year as a result of desegregation, together with a copy of the nonracial objective criteria required by Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1970), to be used in effectuating such dismissals or demotions.
(d) On or before October 15, 1975, and annually on that date thereafter, until further order of the Court, school authorities shall cause to be filed with the Court, with copies served on counsel for the plaintiff and State and County Boards of Education, a report showing the grade structure and number of students and teachers, by race, assigned to each school in the new district; the number, by race, of administrators, teachers, and staff newly hired during the past year; the requests and the results which have accrued, by race, under the majority to minority transfer provision of this order; a brief description of any present or proposed construction or closing of any school facilities; and a description of the activities of the bi-racial committee established pursuant to the provisions of the Revised Plan.
9. The Court shall retain jurisdiction of this action to insure effective implementation of desegregation.
NOTES
[1] Haney v. County Board of Education of Sevier County, 429 F.2d 364 (8th Cir. 1970); United States v. Texas, 321 F.Supp. 1043 (E.D.Tex.1970), aff'd 447 F.2d 441 (5th Cir. 1971), cert. denied, sub nom., Edgar v. United States, 404 U.S. 1016, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972).
[1] Stipulation filed December 12, 1974, paragraphs 33, 34, and 35.