530 F.Supp. 469 (1981)
Ann MacDONALD and Carl Jason, Plaintiffs,
v.
FERGUSON REORGANIZED SCHOOL DISTRICT R-2, et al., Defendants.
No. 78-776C (1).
United States District Court, E. D. Missouri, E. D.
December 23, 1981.
As Amended January 8, 1982.
*470 Donald L. McCullin, Wilson, Smith and McCullin, St. Louis, Mo., for plaintiffs.
Norman C. Parker, Susman, Schermer, Rimmel & Parker, St. Louis, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
This matter is before the Court upon a claim that plaintiffs were denied promotion on account of plaintiffs' race in violation of § 1 of the Civil Rights Act of 1866, and 42 U.S.C. § 1981. The Court concluded a bench trial which concluded on January 28, 1981. After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, the Court hereby makes the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law equally applicable as a finding of fact is adopted as such.

*471 Findings of Fact

1. Defendant, Ferguson Reorganized School District R-2, is a public school district in St. Louis County duly organized and existing under the laws of the State of Missouri.
2. The Ferguson Reorganized School District R-2 was on or about June 7, 1975 enlarged in its geographical boundaries by Order and Judgment of the United States District Court for the Eastern District of Missouri, Cause No. 71-C-55(1) to annex two other school districts, namely, Kinloch School District and Berkeley School District. This Order of the United States District Court was entered following an Order of August 27, 1973, reported at 363 F.Supp. 739, and an Order entered January 9, 1975, reported at 388 F.Supp. 1058, and the decision of the United States Court of Appeals of the Eighth Circuit, reported at 515 F.2d 1365, for the desegregation of the Kinloch School District which was one hundred per cent (100%) black district. The plan for desegregation ordered by the court called for the closing of Kinloch schools including the Kinloch High School and the Kennedy Junior High School at the end of the school year, 1975-1976. The last order entered by the court in the desegregation case was January 30, 1978. Plaintiff, Carl Jason, a black male, was employed as Principal of the Kinloch Senior High School in the Summer of 1974 and served his first school year as Principal during school year 1974-1975. He was also Principal at Kinloch for the school year 1975-1976. For the school year 1976-1977, Carl Jason was assigned from Kinloch Senior High School, which was closed in June, 1976 by order of the court, to Assistant Principal at the McCluer North High School which is in the Ferguson Reorganized School District R-2. Plaintiff Carl Jason continues to hold his reassigned position as Assistant Principal at McCluer North High School.
3. Plaintiff Ann MacDonald, a black female, was employed by defendant school district's predecessor, Kinloch School District, as Principal of Kennedy Junior High School for the academic years 1974-1976. Ms. MacDonald was transferred from the Kennedy Junior High School, which closed in June, 1976 by order of the court, to Assistant Principal of the Berkeley Junior High School which is in the Ferguson Reorganized School District R-2. Plaintiff MacDonald is now a community coordinator for Title VI programs for the Ferguson-Florissant School District. Plaintiff MacDonald testified that her new job was a lateral move from her previous position at Berkeley Junior High.
4. At the time the defendant school district was ordered to annex Kinloch School District, the educational opportunities provided in the Kinloch School District were remarkably inferior to the opportunities in the Ferguson Reorganized School District R-2. Kinloch's assessed valuation per student was one-third of Ferguson's and one-sixth of Berkeley's. Kinloch's physical plant was markedly inferior to the buildings and equipment in the Ferguson School District particularly at the high school and junior high school levels. The educational degrees held by Kinloch teachers was much lower than that possessed by Ferguson teachers and Kinloch had a higher turnover rate. Additionally, the number of library books available to students in Kinloch was significantly lower, the curricula were much more limited in Kinloch than in the Ferguson School District. In short, the quality of education in Kinloch was significantly lower than in Ferguson. This is demonstrated by the fact that Kinloch was classified as AA while the Ferguson School District was classified as AAA which is the highest rating possible by the Missouri State Department of Education.
5. At the time plaintiff Jason was employed in the Kinloch School District as Principal of the Kinloch High School the enrollment at that high school was 262 students and there were 22 teachers. For the school year 1976-1977, which was the first year plaintiff Jason was assigned to the McCluer North High School as assistant principal, the student enrollment was 2,407 and the number of teachers was 119. Mr. *472 Jason did not complain that his transfer to McCluer was a demotion. The administrative staff at McCluer consisted of one principal and four assistant principals. Plaintiff Jason has supervisory responsibility for the eleventh grade of McCluer North which translates into supervisory responsibility for approximately 600 students and 30 teachers. Kinloch offered 57¾ units necessary to attain a high school degree while McCluer offered 120 units. McCluer also had fifteen departments which demanded a much higher level of sophistication and training from teachers and administrators than was called for at Kinloch High School. McCluer North was undergoing integration when Jason was transferred there. Plaintiff Jason's salary has been as follows:

 1974-1975 1975-1976 1976-1977 1977-1978 1978-1979 1979-1980
 $16,500 $20,000 $21,500 $23,000 $24,400 $25,600

6. When plaintiff MacDonald was appointed Principal of the Kennedy Junior High School, that school had 170 pupils enrolled and there were 10 teachers. Kennedy Junior High School was actually a middle school for it only included the seventh and eighth grades. The school year 1976-1977, the first year plaintiff MacDonald was assigned to Berkeley Junior High School as Assistant Principal, the student enrollment was 1,007 and the number of teachers was 71. The administrative staff at Berkeley consisted of one principal and two assistant principals. At Berkeley Junior High School, plaintiff MacDonald has supervisory responsibility for approximately 500 students and 35 teachers. Plaintiff MacDonald also chairs a number of departments at Berkeley Junior High School. She is also in charge of discipline for the entire school. The Berkeley Junior High teaches grades seven, eight and nine. Plaintiff MacDonald did not originally complain about her transfer to Berkeley. Plaintiff MacDonald's salary has been as follows:

 1974-1975 1975-1976 1976-1977 1977-1978 1978-1979 1979-1980
 $13,600 $17,000 $20,000 $23,000 $24,000 $25,800

7. At the close of the school year 1976-1977, the positions of principal of the Ferguson Junior High School, Cross Keys Junior High School and McCluer North High School became open. Notice of vacancies at Ferguson Junior High School and McCluer High School were printed and distributed to the staff through a publication called "Board Notes for the Staff". Requests for applications were issued to the entire staff of the school district through a publication called "Board Notes", and thirteen (13) persons, including Carl Jason and Ann MacDonald, applied for one or both of the positions. All the applicants were at the time, and still are, employed in the Ferguson Reorganized School District.
By state law, one must possess an Administrator's Certificate in order to qualify as a principal. Plaintiffs possessed this requirement and were both qualified to be principals as were the other applicants. The school district received applications before and after plaintiffs applied, from others who also possessed the Administrator's Certificate and who were qualified according to state law, to be principals. No applications were received from those outside the Ferguson Reorganized School District.
Each applicant appeared before a committee of six members for an interview. The members of this committee were:
Bill Hampton, Principal
McCluer North High School
Edna Jackson, Librarian
McCluer North High School
Ruby Livinston, Teacher
McCluer North High School
John A. Wright, Assistant SuperintendentSchool Community Relations

*473 Henry A. Prokop, Assistant SuperintendentSecondary Education
Paul B. Koch, Assistant Superintendent  Personnel
Two of the members of the committee are black and the others are white. Two of the members of the committee are women. The committee recommended three applicants for each position and they ranked the applicants in order in which they were listed. For the position of Principal of McCluer High School, the committee recommended (1) Wayne Fields, (2) M. Delores Graham and (3) William Emerick in that order. For the Junior High School position they recommended (1) Daryl K. Hall, (2) Carl Swaringim and (3) Ann MacDonald in that order. The superintendent recommended to the Board of Education the appointment of Wayne Fields to the position of Principal of McCluer High School and Daryl K. Hall as Principal of Cross Keys Junior High School. Cross Keys consists of grades 7-9 with approximately 1200 pupils. Cross Keys is similar to Berkeley Junior High in curriculum, teachers' ability, and physical plant. Since Mr. Fields had been Principal of Cross Keys Junior High School and that position also be vacant the superintendent recommended that Carl Swaringim be appointed to the position of Principal at Cross Keys Junior High School. The Board of Education at its July 13, 1977 meeting made the appointments pursuant to the superintendent's recommendations.
8. In United States v. State of Missouri, et al., 363 F.Supp. 739 (D.C.Mo.1973); 388 F.Supp. 1058, 1062 (E.D.Mo.1975), defendants were ordered to apply guidelines established in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1970) in the conversion of school districts from a dual system to a unitary system.
9. As Principal of Kinloch High School, Carl Jason was responsible for the following functions: planning and scheduling for all students; supervision planning and coordination of extra-curricular activities; coordination of public relations; and evaluation of the school's teachers. Jason was closely supervised by the superintendent. The superintendent had responsibility for supervising the hiring and budgeting at Kinloch High School. Plaintiff Jason's responsibilities at McCluer North High School include taking care of lockers, assigning locker room stickers, watching the lunchroom area, counseling at least twenty students, coordinating commencement exercises for the school, supervising the eleventh grade which could include as many as eight hundred students. The administrators at McCluer North High School  the principal and four assistant principals  share an equal load in the supervision of teachers and instructions.
10. At Kennedy Junior High School, plaintiff MacDonald was in charge of budgeting, personnel supervision and evaluation, building maintenance and supervision, discipline and general hiring and dismissals of staff and teachers. The Court notes that Kennedy Junior High School had no gymnasium, no cafeteria, or library and was housed in a very small building and had very little purchasing conducted at the school. Plaintiff MacDonald was not in charge of the industrial arts or the home economics program at Kennedy. As with Kinloch High School, the central office of the superintendent played a great role in supervising the purchasing duties at the school and the activities and curricula offered to the students. Plaintiff MacDonald did not make the final decisions at Kennedy Junior High  this was the prerogative of the superintendent.
Plaintiff MacDonald's duties at Berkeley Junior High School include discipline of the student body, the evaluation of half the professional staff, supervision of the field trip budget, recommendations to the principal concerning curriculum. Berkeley Junior High School has a principal and two assistant principals. It would be impossible for one administrator to run Berkeley Junior High School, indeed, all three administrators are needed to officially and effectively run the school. During plaintiff MacDonald's tenure at Berkeley Junior High School, the high school was involved in busing for the purposes of desegregation.
*474 11. All the members of the selection committee who testified affirmatively denied that the screening committee was in any way a sham or that the selection process was a guise for discrimination. Members of the selection committee who testified also denied that any pressure or suggestions as to the result the committee should achieve from the school board or the superintendent's office. The Court finds that the committee's decision not to offer the vacant principalships to plaintiffs Jason and MacDonald is not the result of racial animus.
12. State and federal agencies monitoring the desegregation of Ferguson School District and Kinloch were aware of the use of this selection committee to fill the principalships of McCluer High School and Ferguson Junior High School.
13. The selection committee made its recommendations as to the applicant's ratings in these categories: leadership presence; use of language, communication skills, professional training, human relations training and ability, experience relevant to position, ability to absorb and disseminate material, planning ability, judgmental ability, management ability, financial and budgeting skills, evaluation of knowledge and experience. These standards have been utilized for over fifteen years by similar screening committees in the Ferguson district and in various industries. The members of the selection committee were experienced administrators who understood the meaning of these different categories. The committee's agreement on a particular candidate's recommendation was unanimous.

Conclusions of Law

Singleton Guidelines Are Applicable
1. The Court has jurisdiction of the parties and the subject matter of this action pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, and 28 U.S.C. § 1343(3) and (4).
The Court in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1970) laid out a number of guidelines designed to protect school staff members dismissed or demoted as a consequence of the desegregation process. The dismissal or demotion must occur before the end of the desegregation process for the Singleton guidelines to apply. Lee v. Walker County, 594 F.2d 156 (5th Cir. 1979); Keglar v. East Tallahatchie School, 378 F.Supp. 1269 (N.D. Miss.1974). Defendants argue that the Singleton guidelines do not apply because the segregation of the Ferguson district was achieved in the 1976-1977 school year and, therefore, plaintiffs' demotion, which occurred in February, 1976, was after the Ferguson district became unitary. The Court cannot agree with this argument. In Lemon v. Bossier Parish School Board, 444 F.2d 1400, 1401 (4th Cir. 1971), the court remarked that a school district must be operated as a unitary system for several years before it is considered "unitary" within the meaning of that term in Singleton. Accord U. S. v. Coffeeville Consolidated School District, 365 F.Supp. 990 (N.D.Miss. 1973) (one semester of unitary system not sufficient to complete desegregation process). See Thompson v. Madison County Board of Education, 496 F.2d 682 (5th Cir. 1974). The desegregation of the Ferguson School District was not complete during the 1976-1977 school year. Thus, plaintiffs' purported demotion occurred before the Ferguson School District became a unitary system and the Singleton guidelines apply.

Application of the Singleton Guidelines
2. The Singleton Court defined in a demotion as inter alia, any reassignment "(1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment previously." Singleton, supra, 419 F.2d at 1218. Each case must turn on its own unique facts. Lee v. Pickins County School System, 563 F.2d 143, 146 n. 2 (5th Cir. 1977). While the Court is empowered to consult increases or decreases in salary, Lee v. Board of Education, 453 F.2d 1104 (5th Cir. 1971) and the size of the respective schools, U. S. v. Gadsen *475 County School Board, 22 F.E.P. cases, 1217 (5th Cir. 1976), the touchstone in a demotion inquiry under Singleton is whether "a reduction in responsibility" has occurred. Lee v. Russell County Board of Education, 22 F.E.P. 1526 (5th Cir. 1977). The Court must weigh the responsibilities actually held by the plaintiff in a particular position as opposed to those responsibilities borne in the position alleged to have been a demotion. After comparing the responsibility inherent in the position of principal of Kinloch High School and the responsibility required as assistant principal of McCluer North High School, the Court concludes that plaintiff Jason did not receive a "demotion" within the meaning of Singleton when he was transferred to McCluer North High School. At McCluer North, plaintiff supervises at least two and one half times as many students as he did at Kinloch. A much higher level of expertise and responsibility is demanded by an AAA school such as McCluer North High School as opposed to Kinloch which is only an AA school. Plaintiff Jason's responsibilities as assistant principal of McCluer North were supervised by the principal, however, plaintiff Jason's responsibilities as principal of Kinloch were closely monitored by the superintendent. The principalship of a large, sophisticated integrated high school such as McCluer North High School, attended by older students of both races in their last years of public education who may take courses in over fifteen departments taught by a diversified, highly qualified bi-racial faculty, may not be fairly regarded as the demotion. Plaintiff Jason's label as assistant principal as opposed to that of principal at Kinloch High School can certainly not be controlling nor can plaintiff Jason's subjective feelings. Plaintiff Jason maintained many of the responsibilities he had at Kinloch when he transferred to McCluer North and also acquired or shared the duties at McCluer North which called upon him to exercise the skills, expertise and talent untapped by the duties at Kinloch.
Plaintiff MacDonald actually supervised almost three times as many students and teachers as assistant principal at Berkeley Junior High as she did as principal of Kennedy Junior High School. At Kennedy, plaintiff MacDonald had no cafeteria, library or gymnasium to oversee, whereas Berkeley Junior High School has all these facilities. Plaintiff MacDonald had a significant share of the responsibility to develop curriculum at Berkeley Junior High School and was also given almost complete charge of discipline at Berkeley Junior High School. Plaintiff MacDonald's salary increased when she took the assistant principalship of Berkeley Junior High School. Plaintiff MacDonald was also called upon to share in the integration process at Berkeley Junior High School, a responsibility which demanded a high degree of energy and creativity on the part of the administrators. Taken together, the Court concludes that while some of plaintiff MacDonald's duties at Berkeley Junior High School were different than those duties she held as principal of Kennedy Junior High School, nonetheless the Court concludes that by the weight of the evidence each position contained a commensurate amount of responsibility. Plaintiff may have been a big frog in a little puddle while at Kennedy and a little frog in a big puddle at Berkeley, but she shared equal responsibility at both jobs. Plaintiff's subjective feelings and the mere change in title cannot control what constitutes equal responsibility. Plaintiff MacDonald was not demoted when she was transferred to Berkeley Junior High School as assistant principal.
Both plaintiffs were transferred to jobs of equal responsibility and therefore are not entitled to automatic promotion to the next available position comparable to their former positions, i.e., McCluer North High School, Berkeley Junior High School and Cross Keys High School.

Burden of Proof
3. In this action under 42 U.S.C. § 1981, plaintiffs must prove an intent to discriminate on the part of the defendants to prevail. Williams v. Anderson, 562 F.2d 1081, 1086 (8th Cir. 1977). The Court is admonished to conduct a sensitive inquiry *476 into such circumstantial and direct evidence of intent as may be available. Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). The court may conduct a sensitive inquiry into the impact of the challenged action, its historical background, and legislative and administrative history. Indirect evidence of discriminatory intent may be sufficient to establish a prima facie case of racial discrimination and to create a rebuttable presumption in favor of individual relief. There is no inflexible formulation of what constitutes a prima facie case. It varies with respect to differing factual situations. Id. at 1088. However, the burden will shift and "a school district must show by clear and convincing proof that the dismissal of black teachers was not unlawfully discriminatory if the district has had a long history of segregation, if there is a decrease in the number of black teachers, if the proportion of the black faculty to white faculty is significantly less than the proportion of black to white students, and if only black teachers were dismissed." Moore v. Board of Education of Chidester School District No. 59, Arkansas, 448 F.2d 709, 711 (8th Cir. 1971).
Plaintiffs did not carry their burden to show that invidious discriminatory purpose was the motivating factor behind their transfers. Plaintiffs failed to establish a prima facie case and the four factors which the Chidester court relied upon in holding that the burden of proof shifted to defendants were absent in this case. While there has been a history of segregation in the Ferguson District, there is no evidence to indicate that there was a decrease in the number of black teachers, a significantly less proportion of black faculty to white faculty in comparison to black to white students, and that only black teachers were dismissed. See Clark v. Mann, 562 F.2d 1104 (8th Cir. 1977). While the prima facie case may be established by the use of statistical evidence, plaintiffs did not present any statistical evidence at trial. Nor did plaintiffs proffer any indirect proof such as the impact of the challenged action, the historical background and legislative or administrative history. Williams, supra, 562 F.2d 1086-1087. While two black plaintiffs were denied promotions from assistant to full principal, the over-all impact was the same for the number of black administrators in the district did not change. Moreover, there were no discriminatory salary scales involved in the instant set of action as compared to the set of facts in Williams, supra. As to historical background, there was a finding of intent to maintain separate facilities in the old Berkeley, Kinloch and Ferguson districts. However, at the time of this lawsuit, the decision-making apparatus of those districts had gone through a radical change as a result of the court's order in United States v. State of Missouri, supra. In short, the decision-making body which decided not to promote plaintiffs was not the same decision-making process which created and maintained segregated school districts in the past. Finally, with respect to the legislative and administrative history of this lawsuit, it should be pointed out that the state and administrative agencies overseeing the integration of the Ferguson Reorganized School District were aware of and tacitly approved of the selection process employed by defendants. For all the above reasons, the Court concludes that plaintiffs have failed in their burden to show purposeful racial discrimination on the part of defendants as the motivating reason behind defendants' decision to not offer the principalships of McCluer North High School to plaintiff Jason and Berkeley Junior High School to plaintiff MacDonald.

Criteria Used in the Selection Process
4. The Court finds that defendants did not utilize discriminatory criteria in the selection process used to pick the principals for McCluer High School, Ferguson Junior High School and Cross Keys Junior High School. In Moore v. Board of Education of Chidester School District No. 59, Arkansas, supra, 448 F.2d at 713, the court through Judge Heaney said:
That a board of education is obligated to use objection non-discriminatory standards *477 in the appointment, assignment and dismissals of teachers. A board may also consider established and previously announced non-discriminatory subjective factors in making such decisions.
On the whole, the Court finds that most of the criteria used by the selection committee was objective and none of the criteria involved were discriminatory on their face. As to those standards which might be deemed subjective, the Court can find no evidence that they were discriminatorily applied by the selection committee. Every witness involved in the selection process unambiguously denied that there had been any interference or suggestion that the criteria be applied in a racially discriminatory manner. The fact that there were two black members of the selection committee and that the committee's decision was unanimous supports the above conclusion.
It should also be noted that the criteria which are challenged as subjective, such as educational philosophy and leadership ability, are clearly relevant and informative to a good school principal. Hereford v. Huntsville Bd. of Ed., 574 F.2d 268, 274 (5th Cir. 1978). The evidence showed that the criteria used by the selection committee had been utilized for fifteen years without complaint. Certainly, the criteria did not approximate "euphemistic references to actual or assumed racial distinctions." Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770, 782 (8th Cir. 1966). Viewing the entire process as a whole, including the criteria employed, application of that criteria, make-up of the selection committee and qualifications of the applicants; the court is convinced the selection standards were neither subjective nor discriminatory.